UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CASSANDRA CRAVENS,

    *Plaintiff*,

v.

PACT, INC.,

    *Defendant*.

Civil Action No. 1:19-cv-01357 (CJN)

## MEMORANDUM OPINION

Plaintiff Cassandra Cravens was terminated by Defendant Pact, Inc., purportedly for failing to generate sufficient revenue in her role as a country director. *See generally* Am. Compl., ECF No. 6. Believing that she was instead terminated because she is a woman, Cravens sued Pact for sex discrimination, alleging violations of the D.C. Human Rights Act (DCHRA), D.C. Code Ann. § 2-1401, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e. *See generally* Am. Compl. Pact moves to dismiss for failure to state a claim. *See generally* Def.'s Mot. to Dismiss Pl.'s Am. Compl., ECF No. 7. For the reasons discussed below, the Court denies Pact's Motion.

### I.    Background

Cravens was hired by Pact, a nonprofit international development organization, in August 2006. Am. Compl. ¶¶ 5–6, 8.[1] From 2014 to 2018, Cravens served as Pact's country director for Ethiopia. *Id.* ¶¶ 6, 15. In that capacity, Cravens was responsible for generating enough revenue

---

[1] On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept well-pleaded facts in the Amended Complaint as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

to operate her office, including covering her salary and related costs. *Id.* ¶ 11. Cravens claims she excelled in this role not only by raising the necessary funds, but also by exceeding her targets and expanding the donor base. *See id.* ¶¶ 11–12. She was awarded a pay raise that went into effect in January 2018, and her contributions were recognized by Pact's senior leadership, which gave her positive feedback about her ability to manage a "complex operating environment." *Id.* ¶¶ 10, 13. But according to Cravens, her supervisors could not provide her with "any meaningful management or supervisory support . . . because she was substantially more experienced" than they were. *Id.* ¶ 14. And although members of the senior leadership team lacked Cravens's experience, they were still paid more than she was. *Id.*

Cravens's experience was allegedly symptomatic of larger work-culture issues and systemic discrimination. Cravens alleges that the Company's president and CEO, Mark Viso—who was responsible for hiring and firing decisions—engendered a culture of intimidation and bullying. *See id.* ¶¶ 7, 22. Although Viso was allegedly "universally disliked," he was "particularly threatened" by women who were willing to speak out and challenge him and try to "rise to higher positions within the organization." *Id.* ¶¶ 22–23. Cravens appears to allege that Viso's attitude translated into a systematic failure to promote women to the senior and executive levels and a preference for hiring men with "substantially less experience." *Id.* ¶¶ 26, 31.

According to Cravens, Viso's attitude and Pact's preference for retaining and promoting men ultimately culminated in her termination. She claims that she "challenged Viso's claims to infallibility" and proposed "alternative goals and methods" several times, and that because Viso does not respond well to women who challenge him, she was fired. *Id.* ¶¶ 15, 24–25. Cravens further claims that she was told her termination was a result of her failure to generate sufficient revenue and because "her pipeline for additional donations was not robust enough."

*Id.* ¶¶ 15, 16. Cravens disputes this "patently and provably false" explanation, asserting that she successfully funded her office, in part by securing two cross-border awards, which in turn attracted new donors to the country portfolio. *Id.* ¶¶ 17–18. Not only that, but she was temporarily replaced by a male employee who "did not play any role in revenue generation" and who was ultimately promoted to a higher-level position, even though he had "substantially less experience than [Cravens]."

In September 2018, Cravens filed a Charge of Discrimination with the D.C. Office of Human Rights ("OHR"). *Id.* ¶ 36. The OHR charge was cross-filed with the Equal Employment Opportunity Commission. *Id.* ¶ 37. OHR issued Cravens a Right to Sue Letter on March 25, 2019, *id.* ¶ 38, and on May 10, 2019, Cravens filed her Complaint in this Court, asserting discrimination in violation of the DCHRA and Title VII. After Pact moved to dismiss, Cravens amended her Complaint, and Pact then renewed its motion.

## II.     Legal Standard

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Cravens must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court must construe the Complaint "in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-[pleaded] factual allegations." *Nicholson v. Spencer*, 311 F. Supp. 3d 1, 3 (D.D.C. 2018) (citation omitted).

Under both Title VII and the DCHRA, it is unlawful for an employer to discriminate against an individual because of sex, and "[a]n employee who has suffered an adverse employment action because of [her sex] has been subjected to a violation of both statutes."

*Mawakana v. Bd. of Trs. of the Univ. of the D.C.*, 926 F.3d 859, 863 (D.C. Cir. 2019) (citations omitted) (noting same analysis applies to race discrimination claims under Title VII and DCHRA). To survive a motion to dismiss, Cravens is not required to plead every element of a prima facie case of discrimination under the first step of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g.*, *Jones v. Air Line Pilots Ass'n, Intern.*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002)); *Chien v. Sullivan*, 313 F. Supp. 3d 1, 14 (D.D.C. 2018)).[2] Courts have found the *McDonnell Douglas* framework helpful, however, in determining at the motion to dismiss stage "whether the plaintiff can *ever* meet h[er] initial burden to establish a prima facie case" of discrimination. *Chien*, 313 F. Supp. 3d at 14 (emphasis added) (alteration in original). The question here, therefore, is whether "viewing the evidence in the light most favorable to [Cravens] and drawing all reasonable inferences accordingly," Cravens has pleaded a claim for discrimination—that is, whether she has pleaded plausibly: (i) that she suffered an adverse employment action and (ii) that the adverse action was on account of her sex. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (citing *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999) (other citations omitted)).

### III. Analysis

Cravens has stated a plausible claim for discrimination. Pact rightly does not dispute that Cravens's termination constitutes an adverse employment action. At issue, then, is whether

---

[2] Although some courts have questioned whether *Swierkiewicz* remains good law after *Iqbal* and *Twombly*, this circuit has continued to apply it in holding that plaintiffs need not plead a prima facie case at the motion to dismiss stage. *See, e.g.*, *Jones*, 642 F.3d at 1104 (D.C. Cir. 2011); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29, 28 n.2 (D.D.C. 2010) (collecting cases holding *Swierkiewicz* is good law and noting that "*Twombly* relied explicitly on *Swierkiewicz*[,] and *Iqbal* failed to mention *Swierkiewicz* or expressly overturn it.").

Cravens has adequately pleaded that her termination was on account of her sex. Pact contends that Cravens relies on conclusory legal allegations and does not allege facts that support a causal inference that her sex was a motivating factor in her termination. *See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Mot.") at 6–7, ECF No. 7-1. Specifically, Pact argues that Cravens fails to show how male employees were treated differently and that she improperly "invoke[s] a combination of a cat's paw theory and circumstantial evidence of . . . discrimination." *Id.* at 7–8.

It is true that Cravens does not expressly state who terminated her or notified her of the termination.[3] But she does allege that Viso, the CEO, is "responsible for . . . [Pact's] hiring and firing decisions" and "thinks nothing of terminating competent staff." Am. Compl. ¶¶ 7, 22. Those allegations—taken together with the allegation that Cravens was terminated after challenging Vito—lead to a reasonable inference that Vito, who harbored the discriminatory animus, either terminated Cravens or directly ordered her termination.[4]

Pact also argues that Cravens relies on conclusory allegations and that nothing in the Complaint supports a causal inference that her sex was Pact's motivating factor. Mot. at 6–7. It takes issue with Cravens's reliance on information gleaned from Glassdoor, a publicly available

---

[3] Pact argues that the Complaint "is silent as to who made the ultimate decision to terminate" her and that Cravens relies on a "cat's paw theory." Mot. at 8 (citing *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 297 (D.C. Cir. 2015)). A cat's paw case is one in which a plaintiff seeks to hold his or her employer liable for the animus of an employee who influenced (but did not make) the ultimate adverse employment decision. *See Staub v. Proctor Hosp.*, 526 U.S. 411, 413 (2011). This theory requires a plaintiff to show that a supervisor performed an act motivated by discriminatory animus; that the supervisor intended such an act to cause an adverse employment action; and that the act is a proximate cause of the ultimate employment action. *Burley*, 801 F.3d at 297 (citing *Staub*, 526 U.S. at 422).

[4] Cravens states in her Opposition brief that a member of senior leadership insisted that Cravens be permitted to work another year before her termination but that Viso rejected this request. Pl.'s Opp'n to Mot. ("Opp'n") at 4 n.2, ECF No. 9. Although Cravens failed to allege this fact in her Complaint, the statement would bolster her contention that Viso was responsible for her termination.

website devoted to employee reviews of companies, as well as the lack of specificity in her allegations that women are treated differently at Pact. *See id*. To be sure, Cravens's claims about a lack of women in executive positions and allegations related to "[a]nti-[w]oman [c]orporate [c]ulture" may lack context and may themselves be too generalized to state a claim. *See* Am. Comp. ¶¶ 22–31; Pl.'s Opp'n to Mot. ("Opp'n") at 4–5, ECF No. 9. But Cravens does not rest solely on those allegations. She also alleges facts regarding her own experience—including reporting to leadership that was allegedly less experienced than she was. Am. Compl. ¶ 14. And Cravens's most compelling allegations relate to the purportedly pretextual nature of her own termination, which is relevant "to discern[ing] whether prohibited discrimination may be a real reason for the alleged action." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 296 (D.C. Cir. 2015). Here, Cravens seeks to show that Pact's stated reason for her termination—not generating enough revenue—is pretextual by pointing to her alleged success and contributions at Pact.

Pact objects to Cravens's allegations related to her performance and argues the Complaint falls short because it hinges on Cravens's own self-assessment, which is insufficient to establish evidence of pretext. Mot. at 8. Cravens's allegations, however, include not just her own assessment of her performance, but *Pact senior leadership*'s "extremely positive feedback" of her performance just prior to her termination. Am. Compl. ¶ 13. In particular, Cravens alleges she received a raise in late 2017, *id.* ¶ 10; generated sufficient revenue to operate her office, secured new awards, and exceeded diversification targets by 300% from February 2018 until just before her termination, *id.* ¶¶ 12, 18–19; and received positive performance feedback in 2018, *id.* ¶ 13.

It is certainly possible that Cravens's work performance still fell short and that her termination was justified. But taken together, at the motion to dismiss stage, these allegations cast enough doubt on the validity of Pact's stated reason for terminating her. This is particularly true when Cravens also alleges that she was replaced by a man who had not generated any revenue and who was soon promoted. *See id.* ¶ 33. In sum, Cravens has adequately pleaded that Pact's "stated reason for the adverse employment action [may have been] a pretext for discrimination" and that Pact may have "ma[de] up or l[ied] about the underlying facts that formed the predicate for the employment decision." *Burley*, 801 F.3d at 296 (internal quotations and citations omitted). Cravens has therefore stated a claim for discrimination under Title VII. And because "Title VII claims and DCHRA claims . . . rise and fall together," she has also stated a claim for discrimination in violation of the DCHRA. *Id.*

## IV.     Conclusion

Pact rightly points out that Cravens's Amended Complaint is sparse on details and facts. But as discussed above, at this stage, "an employment discrimination plaintiff is not required to plead every fact necessary to establish a prima facie case to survive a motion to dismiss." *Jones*, 642 F.3d at 1104 (D.C. Cir. 2011) (citation omitted). Indeed, a complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks and citation omitted). As scant as Cravens's Amended Complaint is, she has alleged enough facts such that this Court "simply cannot state that, as a matter of law, [s]he was not discriminated against based on h[er sex]." *Mawakana*, 926 F.3d at 868. Pact's Motion to Dismiss is therefore denied. An Order will be released simultaneously with this Opinion.

DATE: February 27, 2020

_____
CARL J. NICHOLS
United States District Judge